## NATIONAL CAR COUPLER COMPANY ET AL. *v.* SULLIVAN.

[No. 10,513.   Filed June 17, 1920.]

1. STATUTES.—*Remedial Statutes.*—*Construction.*—In determining the meaning of a remedial statute, courts will consider any existing evil against which the enactment was evidently directed, and, where reasonably possible, ascribe such meaning to the statute as will render it effective for the purpose intended.   p. 446.

2. EVIDENCE.—*Judicial Notice.*—*Contemporaneous History Inducing Enactment of a Statute.*—As an aid in ascertaining the meaning of a statute, courts will take judicial notice of such contemporaneous history as probably led up to and induced its enactment.   p. 446.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Fees of Employer's Physician.*—*Jurisdiction of Industrial Board.*—Section 65 of the Workmen's Compensation Act (§80201 *et seq.* Burns' Supp. 1918, Acts 1915 p. 392), providing that fees of attorneys and physicians for services under the act should be subject to the approval of the Industrial Board, was not intended to enlarge the authority of the board with reference to the fees of physicians beyond that provided in §25 of the act in event of an emergency due to the employer's failure to provide medical care, and the Industrial Board has no authority to pass upon the fees of a physician employed by the employer.   p. 447.

From the Industrial Board of Indiana.

Proceedings under the Workmen's Compensation Act wherein Arthur M. Sullivan filed his application with the Industrial Board for an adjustment of his claim for services rendered the employes of the National Car Coupler Company. From an order allowing the claim, the defendant and its insurance carrier appeal. *Reversed.*

*Joseph W. Hutchinson,* for appellants.

*C. Lewis Green* and *Fred S. Purnell,* for appellee.

BATMAN, J.—The record discloses that on September 5, 1918, appellee, a physician, filed his application before the Industrial Board for the adjustment of his claim for services rendered appellants in the treatment of injuries to the employes of appellant company, resulting from accidents arising out of and in the course of their employment with said company; that such proceedings were had thereon that the full board, on January 4, 1919, made the following finding and order with reference thereto: "And the full board having heard the argument of defendants' counsel, having reviewed the evidence and being duly advised in the premises finds that the plaintiff is a licensed, practicing physician and surgeon and has been located in Attica, Indiana, continuously since September 21, 1910; that as such physician and surgeon the plaintiff was employed by the defendants to treat the injuries of certain of the defendant company's employes who had received such injuries by accidents arising out of and in the course of their employment with said company; that pursuant to said employment the plaintiff did render services in the treatment of injuries of employes of the defendant company who had received their injuries by accident arising out of and in the course of their employment with the defendant company as set out in plaintiff's complaint and in his itemized claim filed therewith; that taking into consideration the charges that prevail in the community in which the plaintiff practices and in which said services were rendered for similar treatment of injured persons of a like standard of living of the employes whom the plaintiff treated, when such treatment is paid for by the injured persons themselves personally, the value of the plaintiff's service is three hundred and forty-one dollars.

"It is therefore considered and ordered by the full board that plaintiff's claim be and the same is hereby approved in the sum of three hundred and forty-one dollars."

An examination of the Workmen's Compensation Act, Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918, discloses that the following provisions were in force, with reference to an employer furnishing an attending physician to his injured employes, when the services in question were rendered, the claim therefor was filed, and the order from which this appeal is taken was made:

"Sec. 25. During the thirty days after an injury the employer shall furnish or cause to be furnished free of charge to the injured employe  *  *  *  an attending physician  *  *  *  and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician, or the industrial board.  *  *  *  If in an emergency on account of the employer's failure to provide the medical care for the first thirty days, as herein specified, or for other good reason, a physician other than that provided by the employer is called to treat the injured employe during the first thirty days, the reasonable cost of such service shall be paid by the employer subject to the approval of the industrial board."

It will be observed that said section first provides that the employer shall furnish an injured employe an attending physician, and such surgical and hospital service and supplies as may be deemed necessary by said attending physician, or the Industrial Board. It is provided that such service shall be free of charge to the injured employe, but there is no provision that the cost thereof shall be subject to the approval of the Industrial Board. Said section, therefore, leaves the employer free to make his own contract for such service, and thereby protect himself from excessive charges. It

will be further observed that, after making provision for the service stated above, it is provided by the last clause of said section that if in an emergency on account of the employer's failure to provide the medical care as therein specified, or for other good reason, a physician other than the one provided by the employer is called to treat the injured employe during the first thirty days, the reasonable cost of such service shall be paid by the employer, *subject to the approval of the Industrial Board.* By the plain language of the section under consideration it is apparent that it was the intention of the legislature that only the fees of physicians called to treat an injured employe in the emergency stated should be subject to the approval of the Industrial Board. The reason for this distinction is obvious when we consider that in the latter case the employer has no opportunity to protect himself against excessive charges by contract. It is thus apparent that it was the intention of the legislature by this section to divide the fees of physicians into two classes, one of which should be subject to the approval of the Industrial Board, and the other should not be. If this section of the act stood alone, we would not hesitate in saying that the fees of appellee in the instant case were not subject to the approval of the Industrial Board. However, we note that §65 of the act of 1915 (§8020w2 Burns' Supp. 1918), which was in force when the services in question were rendered, the claim therefor was filed, and said order was made, reads as follows: "Fees of attorneys and physicians and charges of hospitals for services under this act shall be subject to the approval of the board." The question arises, Was it the intention of the legislature by the enactment of this section to destroy the distinction made in the fees of physicians by the provisions of §25, *supra,* and make all of such fees subject to the approval of the Industrial Board? It is

a well-recognized rule of construction that in de-

1. termining the meaning of a remedial statute courts will consider any existing evil against which the same was evidently directed, and,

2. where reasonably possible, ascribe such meaning thereto as will render the same effective for the

purpose intended. And as an aid in so doing, courts will take judicial notice of such contemporaneous history as probably led up to and induced the enactment of the statute. *Connecticut, etc., Ins. Co.* v. *Talbot* (1888), 113 Ind. 373, 14 N. E. 586, 3 Am. St. 655. It will be observed that §65, *supra,* relates to fees of attorneys, as well as to those of physicians. The provision in that regard being: "Fees of attorneys * * * under this act shall be subject to the approval of the board." As the act of 1915 made no provision for the employment of attorneys, we are not expressly advised as to what the legislature meant by "fees of attorneys under this act," and, if called upon to determine, would necessarily be guided very largely by facts of common knowledge, which evidently led to legislation in that regard. When so guided, we would naturally conclude that the fees of attorneys referred to in said section were those for which an applicant might become liable in the prosecution of his claim before the Industrial Board and on appeal, where an appeal is taken. Such conclusion would be supported by a consideration of the simplified procedure for obtaining compensation under such act and the wrongs to injured employes and their dependents that would probably follow, if some restrictions were not placed upon the cost of legal services rendered applicants in the prosecution of their claims for compensation. And, while it may be said that the services of attorneys, in the defense of a claim for compensation, are as much "under the act" as those rendered the applicant in the prosecution of such claim,

still we do not believe it could be said with reason that it was the intention of the legislature that fees of attorneys engaged by employers, or their insurance carriers, to defend against such applications come within the provisions of such section. The fact that there were no harmful practices at the time of the enactment of the Workmen's Compensation Act respecting charges for legal services when engaged by an employer or his representative, and no good reason to believe that such practices would arise under such act, tends strongly to support the view we have stated. Thus we would be led to classify fees of attorneys in applying §65, *supra,* although the act itself fails to do so by any express provision. We have been constrained to say this much by way of illustration, since the section under consideration by its terms is made to apply to the fees of attorneys, as well as those of physicians.

Directing our attention now to the fees of physicians, we observe that an employer, generally speaking, may become liable for such fees in one of two ways, viz.: (1) By contract, either express or implied, made with the physician; (2) by a physician treating an injured employe when called to do so under an emergency caused by the employer's failure to provide medical care, or for other good reason. It will be observed that in the way first named the employer voluntarily assumes the liability incurred, and has an opportunity to protect himself against excessive charges by contract, and even to obtain such services at less than the prevailing charges by special arrangements, but in the way last named liability instead of being voluntarily assumed by the employer is imposed upon him by statute, under circumstances in which usually he would have no opportunity to protect himself against excessive charges. In view of this fact, and the well-recognized custom, among at least a portion of the medi-

cal profession, to base their charges for services in part on the ability of the one liable therefor to pay, the legislature evidently intended to make the fees of physicians, where services were rendered in the way last named, subject to the approval of the Industrial Board as provided in §25, *supra*. In view of the rule which favors that construction of a statute which does not abridge the right to contract, and the absence of any harmful practice at the time of the enactment of the Workmen's Compensation Act, *supra*, respecting charges for medical services, we are led to believe that the legislature did not intend by said §65, to enlarge the authority of the Industrial Board with reference to the approval of the fees of physicians beyond that provided in said §25, since no good reason appears for believing that harmful practices would arise in that regard under such act, where the right to contract was left open to the employer.

For the reasons stated, we conclude that the Industrial Board was without jurisdiction to make the order from which this appeal is taken. The award of the Industrial Board is therefore reversed, with directions to enter an order dismissing appellee's application to have his claim for services approved.