## BOARD OF COMMISSIONERS OF MARION COUNTY
## *v.* MILLIKAN.

[No. 26,111. Filed May 4, 1934. Rehearing denied October 8, 1934.]

Also No. 26,112. BOARD, ETC. *v.* STANFORD;
No. 26,113. BOARD, ETC. *v.* COFFIN;
No. 26,114. BOARD, ETC. *v.* BROSNAN ET AL.;
No. 26,115. BOARD, ETC. *v.* MUNTER;
No. 26,116. BOARD, ETC. *v.* UNION TRUST COMPANY OF INDIANAPOLIS, TRUSTEE;
No. 26,117. BOARD, ETC. *v.* VAN SICKLE ET AL.

*Charles B. Clarke, Harvey A. Grabill, Joseph J. Daniels, Louis B. Ewbank, Baker & Daniels, Ewbank & Dowden,* and *Samuel Ashby,* for appellant.

*Omer S. Jackson, William Bosson, William H. Thompson, Albert L. Rabb, Thomas D. Stevenson,* and *Jackson & Hinchman,* for appellees.

ROLL, C. J.—Each of the appellees in the above named cases, in June, 1928, filed their separate claims with the auditor of Marion county for refund of certain taxes paid in 1920, 1921, 1922.

The original claims filed with the county auditor

were verified bills for designated totals of sums paid by the claimant on additional valuations alleged to be unlawful, without indicating whether all was paid as state, county, township, school township, city or school city taxes, or on any other account. Afterwards, upon order of court that the complaints be made more specific, each claimant filed an amended and supplemental claim or complaint, of which, each was almost an exact copy of the others, except as to dates, figures indicating the valuation of different properties listed for taxation purposes by the township assessor, and figures indicating the amount alleged to have been paid at the various tax paying time of each of the years here in question and such other changes as was necessary to make each claim apply to the particular facts in that case.

To these several claims appellants filed a demurrer which the court overruled. Appellants then filed answer in six paragraphs, to which appellees replied by a general denial. The court upon request found the facts specially and stated five conclusions of law thereon, to which appellants excepted to the first, second, third, and fifth, and appellees excepted to the fourth.

Appellants motion for a new trial was overruled and also its motion to modify the judgment.

Error is predicated upon the overruling of the appellant's demurrer; the alleged erroneous statement of the first, second, and third conclusions of law; the overruling of its motion for a new trial; and the overruling of its motion to modify the judgment.

The appellees assigned cross-errors, based upon the alleged erroneus statement of the fourth conclusion of law.

The claim of the respective claimants grew out of the following facts, all of which are disclosed by the special finding of facts. That on or prior to July 20, 1919, the auditor of Marion county made out and trans-

mitted to the State Board of Tax Commissioners an abstract of the assessment of property the value of which has been fixed by the various township assessors and other taxing officials as required by section 191, Acts 1919, p. 198, §14231, Burns 1926, §64-1323, Burns 1933, §15727, Baldwin's 1934. On August 23, 1919, the State Board of Tax Commissioners, at its third extended session ordered a horizontal increase in various townships including Center township and the city of Indianapolis in Marion county, in varying precincts, which order directed the county auditor to extend the increased valuation on the tax duplicates. After said order of the State Board of Tax Commissioners was made (On Aug. 23, 1919) and after the tax duplicates had been made out and delivered to the treasurer, a certain taxpayer brought an action for himself and on behalf of all taxpayers of the city of Indianapolis, Center township, Marion county, Indiana in which action the court entered a decree enjoining the county auditor from delivering to the treasurer any tax duplicate (then already delivered) for the collection of taxes for 1919, due and payable in 1920, upon any property in said city, upon a valuation for taxation of property as increased by said order of the State Tax Commission; and also enjoining the treasurer from collecting taxes based on such increase; and this judgment was never set aside nor appealed from. Like suits were brought and like judgments obtained by taxpayers, other than these appellees in other townships in Marion county. An appeal was taken from another judgment of like effect recovered by a taxpayer of another township, and pending that appeal (the tax duplicates having been already prepared and in the hands of the treasurer of Marion county, and the spring installment being less than the total tax for the year without reference to the increase ordered by the State Board of Tax Commissioners) the county treasurer caused to be im-

pressed with a rubber stamp on the tax receipts issued by him to appellees and others a statement that,

"So much of this tax as is based upon the State Tax Commission's horizontal increase in assessment being paid under protest will be credited on the second installment, payable in November, 1920, if that increase shall be finally held invalid."

Appellees and others paid the full amount of taxes due upon their property in the spring of 1920, the valuation of which had been increased by the horizontal raise ordered by the State Tax Board, and before they became due.

The horizontal increase as ordered by the State Tax Board of August 23, 1919, was held invalid by this court in the case of *Fesler, Auditor et al.* v. *Basson et al.* (1920), 189 Ind. 484, 128 N. E. 145, upon the ground that the State Tax Board did not have authority at its third extended session (being the session at which the horizontal increase was ordered) to make a horizontal increase or adjustments as between townships.

Immediately after this case was decided the Legislature of Indiana met in special session and passed what is known as the Tuthill-Kiper Act. (Acts Sp. Sess. 1920, p. 153.) Sections one and two of said act are set out in the opinion of this court in *Bosson* v. *Lemcke, Treas.* (1922), 192 Ind. 668, 137 N. E. 551, and we need not set them out here. But pursuant to that act, the State Tax Board met on July 31, 1920, and reviewed its orders made August 23, 1919, as respects the horizontal raise previously made by them on said date, and certified said order to the Marion County Board of Review. The Marion County Board of Review met on August 6, and again on August 13, 1920, as directed by the provisions of the Tuthill-Kiper Act, *supra,* and on said dates made the horizontal increase in the various townships and in the same amounts that the State Board of Tax Commissioners made in its order of August 23,

1919, and as the order which said board had certified on July 31, 1920, stated. This horizontal increase being the same in all respects, did not necessitate any change in the figures of the tax duplicate which had been theretofore prepared, and the amount of the fall installment of 1920 was the same as the spring installment.

Appellees paid the fall installment of taxes without any objections, also the spring and fall taxes in 1921, as well as the taxes due and payable in 1922. A suit to enjoin the county treasurer, county auditor, and others from entering on the tax duplicate and collecting a tax resulting from the last horizontal increase, was commenced by a taxpayer of Washington township. The lower court refused an injunction and on appeal this court reversed the case. See *Bosson* v. *Lemcke, Treasurer, supra.*

No other steps were taken till 1928, when these appellees filed their claims with the county auditor of Marion county, to recover the taxes paid in the years 1920, 1921, and 1922 on account of the horizontal increase which was made by the County Board of Review in August, 1920.

The conclusions of law as stated by the trial court upon the facts found are as follows:

1.

"That the law is with the plaintiff to the extent that plaintiff is entitled to recover from Marion County, Indiana, the full amount of taxes claimed by the plaintiff, which were paid in the spring of 1920, exclusive of taxs paid for State purposes, in the sum of $504.22, with interest thereon to January 1st, 1931, in the sum of $325.79, or the total sum of $830.01."

2.

"That the law is also with the plaintiff to the extent that plaintiff is entitled to recover from Marion County, Indiana, certain amounts of taxes claimed and paid by plaintiff to the Treasurer of

said county for county purposes only in the fall of 1920, the spring and fall of 1921, and spring and fall of 1922, with interest thereon at the rate of 6% per annum from the time paid until this date, said total amount of county taxes with said interest the plaintiff should recover of said county, being the sum of $695.70."

3.

"That the law is also with the plaintiff to the extent that plaintiff should recover from the State of Indiana certain amounts of taxes paid by the plaintiff to the Treasurer of Marion County, Indiana, for state purposes in the years 1920, 1921 and 1922, with interest thereon at the rate of 6% per annum to this date, said total amount of taxes and interest being $646.36."

4.

"The Court further states its conclusions of law upon the facts found, that as to all other taxes paid by plaintiff, plaintiff is not entitled to recover in this action."

5.

"That said amounts of taxes were wrongfully assessed, collected and paid."

Under the view we take of this case it is not necessary to discuss the question as to whether appellees paid the taxes herein sought to be recovered, voluntarily or involuntarily. This is a special statutory proceeding brought under §§14376-14377, Burns Ann. St. 1926, §§64-2819—64-2820, Burns 1933, §§15881, 15882, Baldwin's 1934, Acts 1919, p. 198, §§332-333. Section 332 reads as follows:

"In all cases where any person or persons or body politic or corporate shall appear before the board of commissioners of any county in this state, and establish, by proper proof, that such person or body politic or corporate has, at any time, paid for any year or part thereof any amount of taxes which were wrongfully assessed against such person or body politic or corporate in such county, it shall be the duty of said board to order the amount so proved to have been wrongfully paid to be refunded to said payer from the county treasury, so far as

the same was assessed and paid for county taxes, and the county auditor shall draw his warrant therefor and the county treasurer shall pay the same out of any money not otherwise appropriated: Provided, however, that after January 1, 1919, any such person or persons, body politic or corporate, shall be barred from recovering any such taxes further back than a period of ten years: Provided, further, That it shall not be necessary for the county council to appropriate any such money ordered to be refunded before the same shall be paid: And provided further, That no taxes shall be considered as having been wrongfully paid or as having been wrongfully assessed when same were extended on assessments made as the judgment of taxing officers authorized to make same, and concerning which no complaints were registered at the time same were made either by application for rehearing or by an appeal."

The right to a refund of taxes under this statute in no wise depends upon whether the tax was paid voluntarily or involuntarily. In the case of *Board, etc.* v. *Adler* (1927), 77 Ind. App. 296, 300, 301, 133 N. E. 602, the court said:

"The legislative purpose was to furnish a simple, direct and inexpensive method by which a citizen may recover taxes wrongfully assessed, whether paid voluntarily or involuntarily. . . ."

It is further stated in the above case, that the remedy afforded by this statute is exclusive. The following language is quoted from that opinion.

"Is the remedy provided by the statute exclusive? The rule is that where the legislature creates a right and prescribes a remedy, or method whereby the right may be enforced, the statutory remedy is exclusive."

Many cases are here collected and cited in support of this rule. It is also well settled that one who founds a right of action on a statute must make a case within its terms. *Durham* v. *Board, etc.* (1883), 95 Ind. 182. The power of the legislature to pass such a statute is

not here questioned; neither is the constitutionality of the 1919 refund statute presented, and we make no decision with reference thereto. If the legislature had the right to grant the right of a refund of taxes wrongfully assessed, they had the right to prescribe the limitations and conditions upon which a refund may be had. *Detrick* v. *State* (1932), 204 Ind. 26, 182 N. E. 706; *State* v. *Lewis* (1892), 134 Ind. 250, 33 N. E. 1024; *Jamieson* v. *Indiana Natural Gas & Oil Co.* (1891), 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652; *State ex rel.* v. *Haworth, etc.* (1889), 122 Ind. 462, 23 N. E. 946, 7 L. R. A. 240.

Where the subject is exclusively legislative it is not for the courts to inquire whether the legislature has acted wisely or unwisely upon the subject. *State ex rel.* v. *Kolsem* (1891), 130 Ind. 434, 29 N. E. 595.

Appellees do not contend that they have made a case within the last proviso of the 1919 refund act. But they contend that the proviso was not intended by the legislature to apply to a case such as we have before us, where no notice was given of the assessment and no opportunity given to petition for a rehearing or by an appeal, but applies only to assessments irregularly made. They say that they should recover upon a showing that the taxes herein were wrongfully assessed, within the meaning of the words "wrongfully assessed" as used in the first part of the refund statute, unaffected by the proviso in the latter part of the statute. In other words, that under the particular facts in this case, the 1919 refund statute should be applied the same as if the statute did not contain the proviso.

We cannot agree with appellees in this contention. As said above, we must look to the entire statute upon the subject, and to all the provisions thereof including the proviso. We are not at liberty to disregard any of its provisions. If we could eliminate

the proviso in the 1919 act, we might have a different question. Whether the showing made by appellees would entitle them to a refund under the statute prior to the passage of the 1919 act, as taxes wrongfully assessed, as that statute has been interpreted by our courts, we need not decide. What constitutes a wrongful assessment, and wrongfully paid taxes under the 1919 act is a far different question than it was under the refund statute in force prior to 1919. The office of a proviso is not to enlarge or extend an act, or the section of which it is a part, but rather to put a limitation upon and to qualify the language employed. *Hughes* v. *Yates* (1923), 79 Ind. App. 247, 135 N. E. 156; *City of Gary* v. *Gary Oakhill Cemetery Assn.* (1917), 186 Ind. 446, 116 N. E. 741. So in this case, the words "wrongfully assessed" as used in the first part of this section, is limited and qualified by the proviso, so that now the words "wrongfully assessed" as used in the first part of the statute is limited and qualified, and a claimant for a refund of taxes wrongfully assessed and wrongfully paid must bring himself within the 1919 statute as limited and qualified by the proviso.

We are forced to the conclusion that the proviso applies to all applications for a refund of taxes voluntarily paid, even though no notice of the assessment was given at the time and no provision has been made by statute for a rehearing or an appeal. Whether such a provision should have been made is not a judicial question, but one entirely within the judgment of the legislature. Such a holding does not, however, leave taxpayers who have been wrongfully assessed and who do not come within the refund statute without a remedy. If the assessment is void or wrongful, they have ample notice of such assessment before they pay them and they are not compelled to pay such taxes. They may refuse to pay the same and apply to the courts for

an injunction against the proper officers to restrain them from collecting such taxes.

In determining the meaning of a remedial statute, courts will consider any existing evil against which the enactment was evidently directed, and where reasonably possible, ascribe such meaning to the statute as will render it effective for the purpose intended. *National Car Coupler Co.* v. *Sullivan* (1920), 73 Ind. App. 442, 126 N. E. 494.

The great number of cases reported in our books on the question of refund of taxes wrongfully assessed, is indicative of the great number of claims presented to the various boards of county commissioners of the various counties of the State for a refund of taxes.

A great many cases are found in Indiana on the question of what taxes could be recovered under the statute passed in 1853, and which remained almost unchanged until the passage of the 1919 act, which statute provided for a refund of taxes "wrongfully assessed" but did not define the words, "wrongfully assessed." So the courts were confronted with the question of, what is taxes "wrongfully assessed" within the meaning of the statute. In reading these cases we find it difficult, if indeed not impossible to reconcile the different cases on this question. See *Board of Commissioners, etc.* v. *Armstrong, Guardian* (1883), 91 Ind. 528; *Schlosser Bros.* v. *Huff, Treas.* (1921), 75 Ind. App. 643, 128 N. E. 854; also see *Kuntz* v. *Sumpton, Treas.* (1888), 117 Ind. 1, 19 N. E. 474, 2 L. R. A. 655, and cases there cited.

So under the refund statute prior to 1919, the taxing officials never could be quite sure as to the amount of revenue they would have to defray the expenses of government, for the reason, that under the refund statute any taxpayer or any number of taxpayers could file their claim for a refund of taxes wrongfully assessed,

for any year or part of year, going back no farther however than ten years. So in the case at bar, if appellees could recover, all the taxpayers in the taxing units affected by the horizontal increase could have collected, and the present taxpayer would in effect be compelled to pay the expenses of government that should have been paid by the taxpayers in 1920, 1921, and 1922. So it is perfectly apparent that appellee claimants nor any other taxpayer in the taxing units affected by the horizontal increase could not be harmed by such increase, as far as the township, school township, civil city, and school city is concerned. The amount of taxes to be raised for any given year is fixed and determined before the rate is fixed, and the rate depends upon the valuation. If the valuation is raised by a horizontal increase, the rate correspondingly goes down, if the valuation is decreased horizontally, the rate likewise goes up. So the result, in dollars and cents, remains the same. So if all taxpayers recovered the taxes paid on the horizontal increase, there would be a deficit in the township and city funds that would have to be made up the following year. So the legislature in 1919 sought to remedy this confused and uncertain condition by passing the 1919 refund statute, by defining, in effect, the words "wrongfully assessed." This was accomplished by the proviso above mentioned. While we have referred to the above proviso as an amendment, it is not in fact an amendment at all. It is a part of the general tax law passed as an original act in 1919. Under the statute as it now exists such a condition cannot exist. By the provision of the proviso, the taxing officials are advised at the time the assessments are made, whether or not any taxpayer is contending that the assessment of his property was wrongful by an application for a rehearing or by an appeal. Thus they are given an opportunity of correcting any error which might have been made by the taxing of-

ficials, and thereby protect the public revenue from unexpected claims.

Appellees further claim that the proviso of the 1919 act does not apply to this case, for the reason that these taxes were not extended or assessed "as the judgment of taxing officers authorized to make same" within the meaning of §14376, Burns Ann. St. 1926, §64-2819, Burns 1933, §15881, Baldwin's 1934, so as to prevent recovery, because no taxing officer is authorized to make a void assessment, and these taxes were extended on a void assessment. They say that these clauses apply only to an irregular original assessment, and not to a void increase in assessment. The facts show that the horizontal increase herein complained of was made by the County Board of Review under the provisions of the Tuthill-Kiper Act, but such assessment was made without giving notice of such action as provided by the general tax law of 1919, and for that reason was unlawful. *Bosson* v. *Lemcke, supra.* It has not been contended that the County Board of Review were not the proper taxing officials to make the horizontal assessment nor that the taxes were not extended or assessed as the judgment of taxing officers authorized to make the same. We think the word "authorized" as it is used in this statute refers to the officers, and not to taxes.

Our conclusion is that the right to recover taxes wrongfully assessed is prescribed by the statute and that this right is exclusive, and before appellees are entitled to a judgment they must bring themselves clearly within its provisions. Having failed to do this they are not entitled to recover.

Judgment reversed with instructions to the lower court to restate its conclusions of law in conformity with this opinion.

Each of the above cases present the same question and the same conclusions of law were stated in each of

them except as to the amount. The above mandate is hereby ordered in each of said cases.

Myers, J., dissents to that part of the majority opinion affecting the 1919 taxes and the reasoning reaching the result as to the other taxes.

### CONCURRING OPINION.

FANSLER, J.—Concurring in the result, I desire to state my views of the questions involved.

The taxes sought to be recovered were voluntarily paid, and could not be recovered in an action in assumpsit. Appellees, therefore, must look to some statute for a remedy, and, such a statute being in derogation of the common law, appellees must bring themselves clearly within it, which they have attempted to do.

Section 14376, Burns 1926, §64-2819, Burns 1933, §15881, Baldwin's 1934, is a substantial re-enactment of the statute of 1853, with certain limiting provisos, the last of which is: "That no taxes shall be considered as having been wrongfully paid or as having been wrongfully assessed when same were extended or assessments made as the judgment of taxing officers authorized to make same, and concerning which no complaints were registered at the time same were made either by application for rehearing or by any appeal."

It appears that the assessments were made as the judgment of the taxing officers authorized to make the same, but the appellees had no notice of the assessments, and, therefore, obviously no opportunity to register a complaint, or apply for rehearing, or appeal, and, therefore, cannot come within the statute if the proviso quoted be literally construed. So construed, the proviso grants the privilege of a refund to those who have had notice of the assessment, and have complained, and have applied for a rehearing, or have appealed, and withholds that privilege entirely from those who were equally

entitled to complain and ask for a rehearing, or appeal, but were deprived of the opportunity for such action by the failure of the tax officers to comply with their statutory duty to give notice. Thus, one class, which has been accorded its statutory right to notice, is granted a remedy, while another class similarly situated, which has been wrongfully deprived of notice, is denied the same remedy.

Section 23, Art. 1, of the Constitution, provides: "The general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens." In my judgment, the proviso quoted, literally construed, is clearly in conflict with this constitutional provision. The question of the constitutionality of the statute has not been presented, but since appellees must rely upon the statute for relief, and we must construe and interpret the statute, we are bound to interpret it in the light of the constitution and determine its effect in the light of the constitution. If we consider the last clause unconstitutional, it has no effect, and the statute, being otherwise complete and operable, will stand. In my judgment, the last clause can only be regarded as within the constitution if it is interpreted as intended to apply only to those who have had notice, which would permit appellees to come within the statute by showing that they had no notice. So construed, appellees are not entitled to relief, since the assessments were made by the statutory officers.

If the last clause is treated as unconstitutional, the part of the statute which remains is substantially the same as the refund statute of 1909, which would still be in effect if this entire statute were held unconstitutional. Under such a construction we are required to interpret the term "wrongfully assessed." I feel that it was not intended that the refund statute should confer upon

one who had voluntarily paid the questioned taxes a right to recover upon a lesser showing than would be required in a court of equity to enjoin the taxes in a suit brought before payment. The decisions of this court interpreting the term "wrongful assessment" are conflicting. I feel constrained to adhere to that line of cases which holds that to be wrongful an assessment must not only be illegal, but also unjust and inequitable. Appellees do not allege that their assessment is unjust or inequitable. One is bound to know that his property is subject to some tax, and a just and equitable assessment should not be enjoined or refunded because of lack of notice, or other irregularity, or illegality in the making of it.