W. H. DREVES, INC. *v.* OSLO SCHOOL TOWNSHIP OF ELKHART COUNTY.

[No. 27,407. Filed June 28, 1940.]

*Arnold, Chipman & Degnan* and *Charles Dohnalek,* all of South Bend, for appellant.

*Harman & Harman* and *William E. Wider*, all of Elkhart; and *Jones, Obenchain & Butler*, of South Bend, for appellee.

SWAIM, J.—This was an action by appellant on a contract for the installation of plumbing and heating in a certain school building belonging to the appellee. The contract price for the work was $7,398.00, of which amount the appellant was paid the sum of $2,295.00 during the course of the work. After the work was completed and the architect had certified that the contractor was entitled to the payment of the balance of the contract price, an action was instituted by taxpayers of the township to enjoin the trustee from expending any further funds in respect to the contract; to have the contract declared void; and to cancel township warrants in the total face amount of $9,000.00, which had been issued to procure funds to pay for such work. Thereupon the said trustee refused to make any further payments on the contract and this action was filed seeking a judgment for the balance of the contract price.

To said complaint appellee filed two paragraphs of answer, the second of which alleged that said contract was illegal and void, and also filed a cross-complaint seeking to recover the amount already paid to said contractor. Appellant filed a demurrer to said second paragraph of answer and also to the cross-complaint on the theory that curative statutes enacted in 1931, 1933, 1935 and 1937 had legalized the contract and made it binding on the school township. Both of these demurrers were overruled and a trial resulted in a judgment that the appellant take nothing by its complaint and that appellee take nothing by its cross-complaint.

Appellant's motion for a new trial, alleging that the decision of the court was not sustained by sufficient

evidence and was contrary to law, was overruled and this appeal followed.

The appellant assigned as error the action of the court in overruling the demurrer to the second paragraph of answer and in overruling the motion for a new trial.

The appellee has presented the contention that this court is without jurisdiction to pass upon the merits of this appeal for the reason that this is a vacation appeal; that the ninety day period for appealing has elapsed; that there has been no notice of this appeal served on the clerk below; and further that no notice of this appeal has been served upon the appellee.

The transcript was originally filed in the office of the clerk of this court on July 19, 1938, which was within thirty days of the date of the final judgment. Because of the failure of the appellant to file briefs within thirty days the appeal was dismissed on August 30, 1938. The next day the appellant petitioned for, and was granted, permission to withdraw the transcript of the record for the purpose of immediately refiling it with the clerk of this court as a new appeal. Said petition also prayed that said transcript be received and accepted as a new appeal as of the date of the refiling thereof; that the assignment of errors attached to said transcript be considered as the assignment of errors in the new appeal; and that the acceptance of service of notice of such petition be considered as notice in such new appeal with like effect as if formal notice thereof were otherwise given. Attached to said petition was a written acknowledgment by attorneys for the appellee of service thereof and consent that the prayer of said petition be granted. The transcript was thereupon refiled as a new appeal and included therein was the original assignment of error, the proof of

service of notice of the original appeal, acknowledged by the attorneys for the appellee and by the clerk of the trial court. No further notice of the appeal was served.

Section 2-3206, Burns' 1933, § 482, Baldwin's 1934, provides two methods of taking a vacation appeal. The second of such methods provides "or such appeals ██ may be taken by procuring from the clerk of the court a transcript of the record, and proceeding in the suit, or so much thereof as is embraced in the appeal, and filing the same in the office of the clerk of the Supreme Court, who shall indorse thereon the time of filing, and issue a notice of the appeal to the appellee." It will be noticed that this second method does not require service of notice of the appeal on the clerk of the trial court. It is only necessary to procure from such clerk a transcript of the record, file the same in the office of the clerk of the Supreme Court and serve notice of the appeal on the appellee. In such a case it is not necessary to serve notice on the clerk. In the instant case, therefore, when the transcript was withdrawn and refiled as a new appeal, the appellant was not required to serve notice on the clerk. *Clark* v. *State ex rel. Lee* (1917), 187 Ind. 276, 281, 117 N. E. 965.

The attorneys for the appellee by their written agreement filed in this court consented to the granting of the appellant's petition, which prayed that the ██ service and acceptance of the notice of the petition be treated as notice of the new appeal with like effect as if formal notice thereof were otherwise given. Later the appellee appeared by its attorneys and filed appellee's brief on the merits of the case. There is no contention that the attorneys who signed said acknowledgment of service of said petition and

consented that the prayer thereof be granted, and who thereafter filed a brief on the merits, were not duly authorized to represent the appellee in this appeal, consequently their right to act for the appellee is presumed. Under such circumstances the appearance by the attorneys and the filing of the briefs of the appellee on the merits waives notice of the appeal. *Neff* v. *City of Indianapolis* (1935), 209 Ind. 203, 206, 207, 198 N. E. 328. This appeal is, therefore, properly before this court for disposition on the merits.

The principal question presented under both errors assigned by the appellee is the effect, if any, of the subsequent curative legislation on the contract in question. It is contended by the appellant and admitted by the appellee, that the contract, under which the appellant did the work in question, was void at the time the work was done. The appellant contends, however, that the contract was legalized and made valid by curative statutes enacted by the Indiana General Assembly in the years 1931, 1933, 1935 and 1937. The acts on which appellant relies are the following: Ch. 60, Acts of 1931, p. 146; Ch. 75, Acts of 1933, pp. 485, 486; Ch. 143, Acts of 1935, p. 493; and Ch. 205, Acts of 1937, pp. 1015, 1016, §§ 61-401, et seq., Burns' 1933, §§ 13896, et seq., Baldwin's 1934.

It is recognized that the legislature may, by a subsequent statute, correct any omission or irregularity in a proceeding which it might have dispensed with by a prior statute. *Follett* v. *Sheldon* (1924), 195 Ind. 510, 539, 144 N. E. 867. The rule is also recognized that curative statutes are to be liberally construed in order to accomplish the remedial purpose intended. *The Board of Commissioners* v. *Millikan* (1934), 207 Ind. 142, 145, 190 N. E. 185; *National Car Coupler Co.* v. *Sullivan* (1920), 73 Ind. App. 442, 446,

126 N. E. 494. The cases announcing this rule, however, as well as all other cases dealing with statutory construction, recognize the fundamental rule that the court, in construing a statute, must first seek to discover the legislative intent and that all other rules of construction are in aid of this fundamental rule. In determining the intention of the legislature "the court will look to each and every part of the statute, to the circumstances under which it was enacted, to the old law upon the subject, if any, to other statutes upon the same or relative subjects, whether in force or repealed, to contemporaneous legislative history and to the evils and mischiefs to be remedied." *Haynes Automobile Co.* v. *City of Kokomo* (1917), 186 Ind. 9, 13, 114 N. E. 758.

In applying this recognized rule to the construction of the said 1931 Act *supra* we are of the opinion that the improvement contract, on which this action is founded, was not validated by said act. Looking first to similar acts passed prior to 1931, we find that in 1929, 1927 and 1925 identical statutes were enacted. (See ch. 56, p. 140, Acts of 1929; ch. 116, p. 309, Acts of 1927; ch. 81, p. 244, Acts of 1925). In 1923 the legislature enacted a statute similar to the 1931 Act *supra*, except that it only purported to legalize bonds issued for the purpose of procuring funds for the payment of public improvements or public buildings, where such bonds had been issued and sold, in good faith, and the purchase money therefor had been received and retained or used for the purpose for which such bonds had been issued. Ch. 39, Acts of 1923, p. 129.

A similar act passed in 1921 was also limited to legalizing bonds. Ch. 5, Acts 1921, p. 12. Prior to 1921

almost every legislature legalized some particular type of municipal bonds.

The purpose of the legislature in legalizing municipal bonds is easily understood. Many of the bonds of this type are sold to individual investors who, in purchasing them, rely on the municipal authorities having complied with all statutory requirements in the issuance of such bonds. The individual investor should not be required to employ an attorney to examine all of the proceedings under which the bonds were issued. Having such bonds declared invalid, because of irregularities in the proceedings, would soon destroy their salability and result in municipalities not being able to procure funds for necessary public improvements and other municipal purposes. The reason for validating such bonds would also apply to notes, warrants, and other municipal obligations of this type. On the other hand, a contractor who enters into a public contract with a municipality may well be considered in a different class from the individual investor who buys the municipal bond. The contractor ordinarily has enough involved in a contract for a public improvement to justify him in causing a legal investigation to be made to insure the validity of his contract. If he fails to make such investigation and then finds after the work is completed that his contract is invalid his case is indeed unfortunate, but his misfortune in such a case would not affect the welfare of the public as would the misfortune of the individual investor who found that municipal securities purchased in good faith were invalid. We are of the opinion that an improvement contract does not come within the intended purposes of such curative act.

The appellee could not contend that the contract here in question was validated by the said 1923 Act,

nor do we believe that said statute as modified and re-enacted by the legislature of 1925 and by each subsequent legislature, up to and including the 1935 legislature, was intended to validate public improvement contracts under the term "other written obligations" as used in said statutes. These statutes provided that such municipal bonds, notes and other written obligations theretofore issued were to be legalized and declared valid only "where said bonds, notes, or other written obligations *have been sold* and the *moneys received from the sale thereof* retained or where said *funds* have been used for the purpose for which said *obligations* were ordered to be sold, or where the improvement on account of which said obligations were *issued* has been completed and accepted."

The appellant by considering only certain parts of said 1931 Act makes a skillful argument that the term "obligations" as used therein includes improvement contracts. In construing a statute, however, we must consider all of its terms and provisions and it is only when to do so would manifestly defeat legislative intent that the words are not to be taken in their plain, ordinary sense. *Hyland* v. *Rochelle* (1913), 179 Ind. 671, 677, 678, 100 N. E. 842. When the plain, ordinary meaning of all of the language of this statute is considered together, it seems obvious that the legislature by the use of the words "other written obligations" did not intend to include therein improvement contracts. Improvement contracts are not "sold" by the municipality. Nor are "moneys received from the sale" of such contracts. Such contracts do not produce "funds" nor do we ordinarily speak of an improvement contract as having been "issued." When we consider the ordinary meaning of this language as used in the 1931 Act in connection

with the words "other written obligations" we must conclude that the legislature intended to legalize only such obligations as were of the same type as bonds and notes. This type of obligations was validated by the statute (1) when they had been sold and the money received from the sale thereof retained by the municipality, (2) when said funds, that is, the proceeds from the sale, had been used for the purpose for which said obligations were ordered sold, or (3) when the obligations were issued on account of some improvement and the improvement was completed and accepted even though the moneys from the sale had not been received by the municipality.

As we have said, the language of the 1933 and 1935 Acts *supra* was identical with the language of the 1931 Act *supra,* therefore, the contract here in question was not validated by either of these acts.

The 1937 Act *supra,* upon which the appellant also relies, contains four sections and an emergency clause, the first section defines certain terms used in the statute, defining the word "bond" as follows: "The term 'bonds' includes bonds, notes and other written obligations evidencing or representing indebtedness, or evidencing or representing the borrowing of money, or evidencing or representing a charge against or obligation of, or lien or encumbrance on specific revenues, income or property of a municipal corporation, including all instruments or obligations payable from a special fund." Section 4 of said 1937 act § 61-412, Burns' 1933 (Supp.) purports to legalize all bonds theretofore issued or executed either for municipal purposes or for the purpose of constructing public improvements *"and in anticipation of assessments or special taxes levied or to be levied on account thereof,* where the proceeds or benefits of such bonds had been received and accepted by such municipal cor-

porations for application to the purposes for which said bonds were issued and executed."

Again by considering only part of the words used in the statute to define "bonds" the appellant insists that the definition is broad enough to include the contract in question. But again, when we consider the entire act and all of the words of the definition, we are of the opinion that the words "bonds, notes and other written obligations" as used therein refer only to such bonds, notes and other written obligations as were used in financing or procuring funds for some municipal project or improvement.

Even if the definition of the term "bonds," as used in this statute, could, by a forced construction, be held to include an improvement contract we do not believe that the particular contract here in question could be held to be legalized by either of the three validating sections of this act. The second section of the act is limited to bonds for the financing of any project where such project has been partly financed by a P.W.A. loan. The third section is limited to "proceedings" taken for the purpose of financing, or aiding in financing, a project where a P.W.A. loan or grant for such project is under contract to be made by the United States of America through the Federal Emergency Administrator of Public Works. The fourth section of said act is limited to bonds issued "in anticipation of assessments or special taxes levied or to be levied on account thereof."

Appellant only contends that the fourth section of said statute is applicable but apparently fails to consider the limitation above quoted. It cannot be seriously contended that the contract in question is not excluded by such limitation. The contract was not a written obligation issued or executed "*in*

*anticipation* of assessments or special taxes levied or to be levied on account thereof."

Since none of the curative statutes on which the appellant relies has legalized the contract, it is unnecessary to consider the questions presented relative to the effect of the constitutional debt limitation having been exceeded by this contract.

Finding no reversible error the judgment is affirmed.

NOTE: Reported in 28 N. E. (2d) 252, 128 A. L. R. 1405.