**BRYANT–POFF, INC., Appellant (Defendant below),**

v.

**Dennis HAHN, Appellee (Plaintiff below).**

**No. 1–382A71.**

Supreme Court of Indiana.

Sept. 29, 1983.

Rehearing Dismissed Oct. 24, 1983.

David E. Lawson, Howard, Lawson & Lowry, Danville, for appellant.

Leon D. Cline, Patrick W. Harrison, Cline, King, Beck, Harrison & Runnels, Columbus, Ralph M. Foley, Foley, Foley & Peden, Martinsville, for appellee.

HUNTER, Justice, dissenting to denial of transfer.

I respectfully dissent to the denial of plaintiff's petition to transfer from the Court of Appeals' decision in *Bryant-Poff, Inc. v. Hahn,* 443 N.E.2d 1266, 454 N.E. 2d 1223 (Ind.App.1982). Plaintiff, Dennis Hahn, seeks review of the Court of Appeals' reversal of a judgment in favor of plaintiff. Hahn sued defendant Bryant-Poff on the joint theories of negligence and strict liability under § 402 A of the Restatement (Second) of Torts and was awarded damages of $663,000. On appeal, the court reversed the judgment and held as a matter of law that the danger was open and obvious, thus precluding liability against the manufacturer. For the following reasons, I would grant transfer, vacate the Court of Appeals' decision, and affirm the trial court's judgment.

Bryant-Poff, Inc., an Indiana corporation, designs, manufactures, and installs large farm equipment, including grain elevators. In 1966, Bryant-Poff installed two grain elevator legs, which it also had designed, at the Decatur County Farm Bureau Cooperative in Letts, Indiana. The elevator legs were used as vertical conveyors to transport grain from the ground to storage areas. An electric motor with a chain and sprocket device located at the top of the elevator leg powered the conveyor. The chain and sprocket mechanism was approximately four feet above a maintenance platform, which was ninety feet above ground.

On June 21, 1977, Hahn, who was eighteen at the time and an employee of the Farm Bureau, was doing maintenance work on one of the grain elevator legs. After working for about an hour on the maintenance platform, Hahn reached his hand between the chain and sprocket to paint a rust spot. At that time, the manager activated the chain and sprocket device from the ground floor operator's station. Hahn's right arm was pulled into the sprocket and crushed. The arm eventually had to be amputated below the elbow.

Two separate electrical cut-off devices had been provided to prevent electricity from reaching the motor that operated the chain and sprocket. One was a fuse disconnection located in the power room in the basement; the other cut-off device was at the maintenance platform and could be engaged from the fourth rung of the ladder leading to the platform. However, this mechanism was inoperable at the time of the injury. Furthermore, Hahn had not been instructed on the operation of the cut-off devices and had not been on the platform prior to the day of his injury. There was testimony that the Bryant-Poff mechanism violated industry standards because no barrier guard was installed on the chain and sprocket. Based on this evidence, the Court of Appeals stated: "[T]here was evidence from which the jury could have concluded that the ungarded chain and sprocket mechanism was unreasonably dangerous in light of industry regulations and standards at the time it was designed and manufactured ...." *Bryant-Poff, Inc.,* No. 1–382 A 71 at 4. However, the court also found that the trial court erred by not granting Bryant-Poff's motion for judgment on the evidence because the "defect should have been obvious to the party injured." *Id.*

As Hahn points out, it is inconsistent under Indiana law to find something unrea-

sonably dangerous but also open and obvious. In *Bemis Co., Inc. v. Rubush,* (1981) Ind., 427 N.E.2d 1058, this Court held that a product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics" in order to be actionable under Section 402A. *Id.* at 1061. The majority then determined that if a danger is open and obvious to the person using it, the product is not unreasonably dangerous. *Id.* Although I still believe that the better approach is to treat an open and obvious danger as but one factor when determining whether a product is unreasonably dangerous, *Bemis,* 427 N.E.2d at 1070 (Hunter, J., dissenting), the Court of Appeals' decision is erroneous under either approach. If the openness and obviousness of a danger is but one factor, it cannot preclude liability if there is other sufficient evidence that the product was unreasonably dangerous. Under the *Bemis* rationale, the Court of Appeals' decision is inherently inconsistent because a product cannot be unreasonably dangerous if it had an open and obvious danger.

Furthermore, the question of whether a product is unreasonably dangerous or, in Indiana, open and obvious, is normally for the jury. In *Bemis,* the Court stated that the trial court erred in *not instructing the jury* on the open and obvious rule and in failing to define unreasonably dangerous. *Id.* at 1064. In *Hoffman v. E.W. Bliss Co.,* (1983) Ind., 448 N.E.2d 277, 285, this Court stated: "A careful examination of the evidence in each case is necessary to determine whether the danger in the product is truly and entirely open and obvious." We refused to hold *as a matter of law* that an overhead ram on a metal punch press was an open and obvious danger because there was conflicting evidence on whether the machine had an internal defect. Also, because the jury *could have believed* a hidden defect existed, and the defendant had failed to warn of this defect, we refused to find the danger open and obvious; instead, we left it for the jury to determine whether the product in *Hoffman* had an open and

obvious danger. *Id.* at 285. *See also J.I. Case Company v. Sandefur,* (1964) 245 Ind. 213, 197 N.E.2d 519 (whether a concealed defect or sudden danger exists is a question of fact). In the present case, however, the Court of Appeals held that the trial court should have granted defendant's motion for judgment on the evidence, thus finding the danger open and obvious as a matter of law.

Judgment on the evidence under Indiana Trial Rule 50 is appropriate only when there is no substantive evidence or reasonable inferences to be derived therefrom to support an essential element of the claim. There must be a complete failure of proof. *Shanks v. A.F.E. Industries, Inc.,* (1981) Ind., 416 N.E.2d 833, 834.

The trial court may not weigh the evidence when entering judgment on the evidence subsequent to a jury verdict, but may consider only the evidence and inferences favorable to the non-moving party. *Huff v. Travelers Indemnity Co.,* (1977) 266 Ind. 414, 363 N.E.2d 985; *Elsperman v. Plump,* (1983) Ind.App., 446 N.E.2d 1027; *Ortho Pharmaceutical Corp. v. Chapman,* (1979) 180 Ind.App. 33, 388 N.E.2d 541. On appeal, a reviewing court is bound by this same standard. *Elsperman,* 446 N.E.2d at 1030; *Craven v. Niagara Machine and Tool Works, Inc.,* (1981) Ind.App., 417 N.E.2d 1165, *affirmed on rehearing* 425 N.E.2d 654. The court must determine whether there was sufficient evidence to support each element of the claim. *Huff,* 266 Ind. at 422, 363 N.E.2d at 991. Despite the fact that there may be conflicting evidence, judgment on the evidence is improper so long as there is relevant evidence to support the claim. *Id.* Only when there is a complete absence of proof, which makes the trial court's denial of a motion for judgment on the evidence clearly erroneous, will the judgment be disturbed. *Id.; Elsperman,* 446 N.E.2d at 1030.

To recover on a products liability claim, a plaintiff must prove that a manufacturer sold a defective product, that the product reached the user without substantial change in the product's condition, and that the

product caused the plaintiff's injury. *Ayrway Stores, Inc. v. Chitwood*, (1973) 261 Ind. 86, 93, 300 N.E.2d 335, 340. *See also Ortho Pharmaceutical*, 180 Ind.App. at 37–38, 388 N.E.2d at 545; § 402A Restatement (Second) of Torts (1965). A manufacturer is liable for a defective product when the product is unreasonably dangerous to the ultimate consumer due to manufacturing flaws, defective design, or inadequate warnings or instructions concerning the dangers associated with the product's use. *Lantis v. Astec Industries, Inc.*, (7th Cir. 1981) 648 F.2d 1118 (applying Indiana law); *Hoffman*, 448 N.E.2d at 281. *See* § 402A *supra*, Comments *g* & *h*. A product is unreasonably dangerous when the danger is beyond the contemplation of the ordinary consumer, who possesses ordinary knowledge common to the community of the product's characteristics. § 402A, *supra*, Comment *i*. Consumers expect a manufacturer to make a product as it was designed, without manufacturing flaws. Similarly, the ordinary consumer contemplates that a manufacturer will design a product that is as safe as reasonably possible without impairing the product's functional capacities and at a reasonable cost. Thus, a manufacturer weighs the cost of safety devices against the possibility and gravity of harm if the safety precautions are not taken. 2 Harper & James, The Law of Torts § 28.4 (1956). Because consumers realize that not all dangers may be avoided, however, they also contemplate that manufacturers will supply adequate warnings and instructions advising the user of latent defects and possible dangers. *Ortho Pharmaceutical*, 180 Ind.App. at 38–39, 388 N.E.2d at 545; § 402A *supra*, Comment *k*. A manufacturer's failure to meet any one of these consumer expectations renders him liable for the defective product when the defect causes the injury.

In the present case, Bryant-Poff argues that Hahn failed to prove that the product was defectively designed or manufactured because the elevator leg's chain and sprocket device performed exactly as it was meant to, and the fuse disconnections would have prevented the injury if the cut-offs had been used. Bryant-Poff also contends that the question whether a guard should have been placed over the chain and sprocket device is irrelevant because Hahn would have had to remove the guard to paint the rusty area. However, the trial court found there was enough evidence to support the elements of Hahn's claim, and, on review, the Court of Appeals admitted there was sufficient evidence to support a finding that the product was unreasonably dangerous. When our standard of review for a motion under Trial Rule 50 is applied, it is obvious the evidence was sufficient to justify submitting the case to the jury.

The evidence most favorable to Hahn indicates that Bryant-Poff had never supplied any instructions or warnings to the Farm Bureau concerning the fuse disconnections. Expert testimony was presented that the absence of a guard over the chain and sprocket device violated industry standards and was unreasonably dangerous. There was additional evidence that Hahn had not worked on the platform before and was unfamiliar with the operation of the elevator leg. Nor had he ever been instructed on where the electrical cut-off devices were located or how to lock out the power to the elevator leg's motor. Additional testimony revealed that the chain was slack when Hahn reached in to paint behind the mechanism, that the chain and sprocket were not in motion while Hahn was on the platform, and that he did not perceive the mechanism as dangerous when he reached in to paint the rust spot. Only when the mechanism was activated did the danger become open and obvious. When activated, the chain was whipped taut and it was this movement that pulled Hahn's arm into the chain and sprocket nip point.

A manufacturer has a duty to make a product as safe as reasonably possible for its foreseeable use. *Hoffman*, 448 N.E.2d at 287 (Hunter, J., concurring in result). If it is feasible for a manufacturer to provide a safety device, it should be a question of fact for the jury to determine whether the absence of the safety device was unreasonably dangerous. 2 Harper & James, The Law

OF TORTS § 28.5 p. 1543 (1956). Hahn presented evidence from which the jury could have found that the absence of a guard violated industry standards, that it was feasible to provide a guard, and that the chain and sprocket device was, therefore, unreasonably dangerous. Additionally, the jury may have reasonably inferred that if Hahn had to remove a guard, he would have been alerted to the need to disconnect the power before working around the chain and sprocket.

Moreover, a product may be defective because of inadequate warnings or instructions by the manufacturer. *Hoffman,* 448 N.E.2d at 281. Bryant-Poff contends that no warning was necessary because the chain and sprocket device was an open and obvious danger. Although it is undisputed that when moving the chain and sprocket presented an open and obvious danger, the facts that the power was not disconnected and that the mechanism could be activated from the ground while a worker was on the platform were not open and obvious dangers. Bryant-Poff provided no warnings on the maintenance platform concerning the need to disconnect the power. Nor was there any warning light to indicate that the power was still on or any instructions on how to disconnect the power. Whether this lack of warning created an unreasonable danger, or was in fact unnecessary, was for the jury to decide once they were instructed on the open and obvious rule and the definition of unreasonably dangerous.

To hold that the danger from the unguarded chain and sprocket, while not in motion, was open and obvious, as a matter of law, creates the very situation those critics of the open and obvious rule have predicted. That is, a manufacturer may avoid liability by purposefully leaving off safety devices in order to make a danger more obvious. *See Bemis,* 427 N.E.2d at 1069 (Hunter, J., dissenting); *Bexiga v. Havir Mfg. Corp.,* (1972) 60 N.J. 402, 412, 290 A.2d 281, 286; *Palmer v. Massey-Ferguson, Inc.,* (1970) 3 Wash.App. 508, 517, 476 P.2d 713, 719. Leibman, *Products Liability, 1982 Survey of Recent Developments in Indiana Law,* 16 IND.L.REV. 241, 261 (1983). This result ignores the policy underlying Section 402A, which is that the manufacturer has the primary responsibility for making a product reasonably safe for its intended and foreseeable use. *Hoffman,* 448 N.E.2d at 287 (Hunter, J., concurring in result); *Micallef v. Miehle Co.,* (1976) 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571.

Bryant-Poff also argues that it was the employer's duty to warn Hahn about the chain and sprocket mechanism and instruct him on the cut-offs. This argument is clearly not Indiana law. A manufacturer has a duty to warn of latent defects in order to make a product as safe as reasonably possible. *Bemis,* 427 N.E.2d at 1061; *Nissen Trampoline Co. v. Terre Haute First Nat'l Bank,* (1976) Ind.App., 332 N.E.2d 820, *rev'd on other grounds,* (1976) 265 Ind. 457, 358 N.E.2d 974. *This duty is not delegable. Hoffman,* 448 N.E.2d at 282–83. *See also J.I. Case Company v. Sandefur,* 245 Ind. at 221–22, 197 N.E.2d at 522–23. Furthermore, a "manufacturer has a duty to warn of potential dangers associated with the use of a product that is otherwise free from latent design or manufacturing defects" if he has some control over the way an employer incorporates the product into his operation. *Hoffman,* 427 N.E.2d at 283. As was the injury producing product in *Hoffman,* the grain elevator leg in the present case was not installed as a component part or in a multi-faceted operation. *Compare Shanks v. A.F.E. Industries, Inc.,* 416 N.E.2d 833. Rather, Bryant-Poff had constructive knowledge of the basic operation of the grain elevator leg at the Farm Bureau and the location of the cut-offs for the chain and sprocket mechanism. Consequently, Bryant-Poff, as the designer and manufacturer of the product, had an undelegable duty to warn of both the latent defects and/or possible dangers associated with the product. Thus, the jury may have found that Bryant-Poff was liable based on inadequate warnings.

Because there was evidence from which the jury could have concluded that Hahn's injury was a result of a defectively designed product or that Bryant-Poff had

failed to provide adequate warnings or instructions, the trial court was justified in submitting the case to the jury. Consequently, to have *granted* Bryant-Poff's motion for judgment on the evidence would have been error. The Court of Appeals erroneously applied *Bemis* and *Shanks* to the present case in holding that the danger presented here was open and obvious as a matter of law. The trial court did not err in letting the jury weigh all of the evidence to determine whether the danger presented to Hahn by the nonmoving chain and sprocket was "truly and entirely open and obvious." *Hoffman,* 448 N.E.2d at 285.

For all of the foregoing reasons, I dissent to the denial of transfer.

DeBRULER, J., concurs.