Margaret Ann KOSKE and Jeffrey L. Koske, Appellants (Plaintiffs),

v.

TOWNSEND ENGINEERING CO., Appellee (Defendant).

No. 52A02–8609–CV–00338.

Court of Appeals of Indiana, Second District.

Aug. 1, 1988.
Rehearing Denied Sept. 30, 1988.

Edgar W. Bayliff, Bayliff Harrigan Cord & Maugans, P.C., Kokomo, Kelly Leeman, Kelly Leeman & Associates, Logansport, for appellants.

Frank E. Tolbert, John C. Muehlhausen, Miller, Tolbert, Wildman, Meuhlhausen & Muehlhausen, Logansport, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellants-plaintiffs Margaret Ann Koske (Margaret) and Jeffrey L. Koske (Jeffrey) [hereinafter collectively referred to as Koskes] appeal the trial court's grant of summary judgment in favor of appellee-defendant Townsend Engineering Co. (Townsend), claiming that the trial court erred, as a matter of law and fact, in determining their product liability action

was barred by the open and obvious danger rule.

We affirm in part and reverse in part.

## FACTS

The undisputed facts indicate that Margaret injured her hand while operating a meat slicing machine that was designed and manufactured by Townsend. The injury occurred at Wilson Foods Company (Wilson), a meat packing plant located in Logansport, Indiana.

The skinner/slasher machine simultaneously cuts the skin from jowls while slashing the tops of jowls to reveal hidden abscesses. The machine has seventeen circular slashing blades across the top and one long skinning blade on the bottom. It is approximately waist high in height and two feet long with a conveyor belt extending from the front. The conveyor moves a jowl into the rotating blades. A toothed roll aids in removing skin from a jowl after the skin has been severed by the skinning blade. The toothed roll pulls the severed skin downward from the blade. The slashing blades have notches which engage the jowl and force the jowl through the blades and through the machine. A cover is mounted over the top of the blades, but an operator of the machine is able to see the blades and the toothed roll. The machine has no safety guards at the point of operation, or elsewhere.

Margaret, employed by Wilson since 1973, was primarily responsible for trimming the remaining hair, skin, and abscesses off of pork jowls immediately after the jowls had gone through the skinner/slasher machine. Consequently, her job station was immediately adjacent to the machine. Approximately two times a week, Margaret assisted on the skinner/slasher machine because it regularly jammed and became a bottleneck in the production line.

On the afternoon of December 28, 1979, the skinner/slasher machine struck an abscess requiring a shutdown for approximately ten minutes to sanitize the machine. The shutdown created a backlog in the processing of jowls, so Margaret left her position as trimmer to help alleviate the bottleneck at the skinner/slasher machine. The jowls being processed had been hanging in the freezer longer because it was toward the end of the work day. As a result, the stiffened jowls would not automatically feed into the machine and some external force was required to push the jowls into the blades. The sanitization of the machine made the conveyor belt wet and slick. Margaret, aware that her hands should not be close to the machine because of the sharpness of the blades, used one jowl to push another jowl into the blades of the machine. This was a precaution she regularly exercised when operating the skinner/slasher machine. Unfortunately, on this day, the bottom of the jowl that she was using to push the other jowl into the machine was wet from the conveyor belt, slid over the top of the jowl closest to the blade, and her hand became caught in the machine. Margaret received severe injuries to her hand.

Townsend advertised that the skinner/slasher machines had "improved operator safety" because the operator's hands were kept a minimum of eighteen inches from the machine's blades. However, Townsend was aware, prior to Margaret's injury, that the machine, under some circumstances, was not capable of operating automatically and continuously. For example, Townsend knew meat packers would freeze meat and that the frozen meat required manually pushing the meat into the blades.

Prior to Margaret's unfortunate injuries, several other operators at various meat packing companies had been seriously injured by the same or a similar skinner/slasher machine model. Townsend was aware of these injuries. Ten months before Margaret's injury, in a letter to a meat packing company, Townsend acknowledged the "potential safety hazard" of the 814 model and urged that "the 814 [be] removed as soon as possible." *Record* at 683. Less than a month after Margaret's injury, Townsend recalled the 814 model and offered a refund of the entire purchase price. The pertinent parts of that letter are:

"Recently we became aware of *several instances* where disregard of the obvious danger of putting a hand in the machine has caused, or is rumored to have caused, serious injuries, including the loss of partial use of a hand and arm to some employees in meat packing plants.

In view of these facts, Townsend Engineering Company is now recalling every 814 model in use.

. . . .

You should discuss this letter with your company safety director and your insurance carriers. This situation is serious enough to warrant immediate action."

*Record* at 145 (emphasis supplied).

Engineering experts agreed that the 814 model was inadequately guarded. One engineering expert asserted that the "potential elements of danger of the operator using that machine were not seriously considered" when the machine was designed. *Elgomayel Deposition* at 30. A barrier guard would have been a very inexpensive safety measure. Other feasible designs with enhanced safety were proposed by these expert witnesses. Townsend replaced the 814 model with model 914. The redesigned skinner/slasher machine was described by a Townsend sales engineer as a unit "designed with operator safety in mind" including a guarded infeed, guarded take away, and interlock switches to prevent operation in an improper manner. *Record* at 143. Additionally, the 914 model displayed a warning sign which cautioned users not to expose hands or clothing to the toothed roll or skinning blade, and not to reach inside the guards.

Koskes's amended complaint sought recovery from Townsend under a theory of strict liability for a defective design resulting in an unreasonably dangerous product and under a theory of willful or wanton misconduct. Jeffrey alleged damages resulting from the loss of his wife's consortium. The trial court granted summary judgment in favor of Townsend concluding the open and obvious danger rule barred Koskes's claims.

## ISSUES

Koskes present four issues, as restated, for our review:

1. Is the open and obvious danger doctrine applicable to claims arising under the Products Liability Act?
2. Is the open and obvious danger doctrine applicable to claims based upon design defects?
3. Does the open and obvious danger doctrine preclude a manufacturer's liability for claims of willful or wanton misconduct asserted by an injured plaintiff?
4. Did a genuine issue of fact exist as to whether there was an open and obvious danger?

## DECISION

**ISSUE ONE**—Is the open and obvious danger doctrine applicable to claims arising under the Products Liability Act?

**PARTIES' CONTENTIONS**—Koskes argue that the open and obvious danger doctrine does not apply to claims arising under the Products Liability Act. They assert the doctrine is a common law rule and was not expressly included in the 1978 enactment.

Townsend responds that the common law doctrine has been followed in cases arising under the Products Liability Act and necessarily is applicable to Koskes's claim.

■ **CONCLUSION**—The Products Liability Act incorporates the open and obvious danger doctrine and is applicable to Koskes's claim.

The Products Liability Act, hereinafter referred to as the Act, is embodied in Ind. Code 33–1–1.5–1 to –8 (1982) (amended 1983). The crux of this dispute hinges on the following pertinent language of the Act:

"[t]he common law of this state with respect to strict liability in tort is codified and restated as follows:

(a) One who sells any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for

physical harm thereby caused to the user or consumer or to his property...."

IC 33-1-1.5-3 (emphasis supplied).

■ The open and obvious danger rule, a creature of common law, precludes the imposition of liability on the manufacturer unless a plaintiff alleges and proves the existence of a latent defect. *See generally* Annot., 35 A.L.R. 4TH 861 (1985). While several jurisdictions indicate a trend away from the rigid application of the rule, *id.*, the Indiana courts and legislature apparently consider the rule viable and sound law. *See Hubbard Mfg. Co. v. Greeson* (1987), Ind., 515 N.E.2d 1071; Note, *A Remedy For Indiana's Product Liability Malady*, 21 VAL.U.L.REV. 159 (1986). The rule was first recognized in Indiana in the landmark case of *Bemis Co. v. Rubush* (1981), Ind., 427 N.E.2d 1058, *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61. *Bemis* was bottomed in common law because the claim arose before the effective date of the Act.

Few cases interpreting the Act have reached the Indiana courts because the Act applies only to causes of action accruing after June 1, 1978. Those cases arising under the Act have recognized the open and obvious danger doctrine. *E.g., Miller v. Todd* (1988), Ind.App., 518 N.E.2d 1124; *Kroger Co. Sav-on Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538, *trans. denied; Angola State Bank v. Butler Mfg. Co.* (1985), Ind.App., 475 N.E.2d 717, *trans. denied; see also Ruther v. Robins Eng'g and Constructors* (7th Cir.1986), 802 F.2d 276; *Estrada v. Schmutz Mfg. Co.* (7th Cir.1984), 734 F.2d 1218.

The preamble of IC 33-1-1.5-3 reflects the legislature's intent to embrace principles developed through common law. The legislature expressly indicated its intention to adopt common law, and further supported this intent by mirroring the language of section 3 of the Act to the language of RESTATEMENT (SECOND) OF TORTS § 402A (1965). *See Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, *trans. denied.*

The definition of "unreasonably dangerous" in comment i to section 402A is the root from which the open and obvious danger rule grew. *See Bemis, supra.* Comment i defines "unreasonably dangerous" as follows: "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." The legislature incorporated this definition in IC 33-1-1.5-2 (Supp.1987) which provides:

" 'Unreasonably dangerous' refers to any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers."

While this definition was not included in the Act until the 1983 amendment, which was subsequent to the accrual of this action, the amendment does apply to the Koskes's claim because we view it as curative legislation.

■ The legislature, by a subsequent statute, may cure a defect or correct any omission which existed in a prior statute. *W.H. Dreves, Inc. v. Osolo School Township* (1940), 217 Ind. 388, 28 N.E.2d 252. However, before construing a statute as remedial, we must first discern the legislative intent. *Id.* We consider several factors in determining the intention of the legislature.

"[T]he court will look to each and every part of the statute, to the circumstances under which it was enacted, to the whole law upon the subject, if any, to other statutes upon the same subject, or relative subjects, whether in force or repealed, to contemporaneous legislative history, and to the evils and mischiefs to be remedied."

*Id.* at 391, 28 N.E.2d at 254.

■ The legislature has signaled an intent to maintain a restrictive approach to product liability claims, similar to that embraced in common law. *See id.; Dague v.*

*Piper Aircraft Corp.* (N.D.Ind.1980), 513 F.Supp. 19. *See generally Note, supra,* at 171–73. The legislature's omission of the "unreasonably dangerous" definition was corrected via the 1983 amendment. This was not a change of policy. *See, e.g., Stewart v. Marson Constr. Corp.* (1963), 244 Ind. 134, 191 N.E.2d 320; *Arthur v. Arthur* (1988), Ind.App., 519 N.E.2d 230; *Bailey v. Menzie* (1987), Ind.App., 505 N.E.2d 126. *See generally* 82 C.J.S. *Statutes* §§ 417–18 (1953). Accordingly, the amendment should be applied retroactively to effect the evident purpose for which it was enacted. *See W.H. Dreves, Inc., supra. See generally* 26 I.L.E. *Statutes* § 194 (1960).

ISSUE TWO—Is the open and obvious danger doctrine applicable to claims based upon design defects?

PARTIES' CONTENTIONS—Koskes contend that the open and obvious danger doctrine only applies to cases arising from the failure to warn of a danger and is not applicable to claims based on defective design.

Townsend replies that the doctrine applies to all product liability claims.

CONCLUSION—The open and obvious danger doctrine does apply to design defect cases.

■ Under Indiana law, a product is not defectively designed if its dangerous properties are patent. *See, e.g., Bryant–Poff, Inc. v. Hahn* (1982), Ind.App., 454 N.E.2d 1223, *cert. denied,* 465 U.S. 1075, 104 S.Ct. 1433, 79 L.Ed.2d 756; *Coffman v. Austgen's Elec., Inc.* (1982), Ind.App., 437 N.E.2d 1003. In *Bryant–Poff,* the open and obvious danger rule obviated liability against the manufacturer for a defectively designed chain and sprocket mechanism despite evidence that industry standards required installation of a barrier guard. In *Coffman,* a twelve-year-old boy was injured when he attempted to remove a bird's nest from a hopper bin on a malfunctioning cross-auger shaft. The open and obvious danger rule precluded Coffman's claims premised on the manufacturer's failure to place a guard over the auger shaft and improper design of a control panel which permitted inadvertent operation of the auger.

So, in both of these Indiana cases, the open and obvious danger doctrine was applied to design defect situations.

ISSUE THREE—Does the open and obvious danger doctrine preclude a manufacturer's liability for claims of willful or wanton misconduct asserted by an injured plaintiff?

PARTIES' CONTENTIONS—Koskes assert that no Indiana cases have extended the open and obvious danger doctrine to claims based on willful or wanton misconduct. They assert that no justifiable reason exists to extend the doctrine to blameworthy activity.

Townsend observes that the product supplied is the same under any theory of liability. Townsend argues that if the manufacturer has not supplied a product which is defective or unreasonably dangerous, it has not supplied intentionally, willfully or wantonly a product which is defective or unreasonably dangerous.

CONCLUSION—A danger that is open and obvious does not necessarily preclude a manufacturer's liability for claims of willful or wanton misconduct asserted by an injured plaintiff.

■ Determination of this issue takes us on an excursion into the unknown. Apparently, no caselaw in Indiana or elsewhere specifically examines the effect of a manufacturer's aggravated misconduct when the danger of the product is open and obvious. *See* Owen, *The Highly Blameworthy Manufacturer: Implications On Rules of Liability and Defense in Products Liability Actions,* 10 IND.L.REV. 769 (1977). The law is not established on this issue; as explained by one commentator, in the stampede to demolish privity and erect strict liability, attention focused on the extent of liability for the *innocent* manufacturer of a defective product. *Id.* Lost in the dust of that stampede were questions concerning how the rules should apply for the *highly blameworthy* manufacturer. *Id.*

Perhaps there is enlightenment in *Bridgewater v. Economy Eng'g Co.* (1985), Ind., 486 N.E.2d 484. In *Bridgewater,* the supreme court embarked on a course of limiting the applicability of the open and obvious danger rule. It did reject applying the rule to general negligence cases. *Id.* Adopting Judge Staton's dissent in *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, *trans. denied,* the court agreed:

> " '[K]nowledge and appreciation of peril are essential elements of [the] defenses [of contributory negligence or incurred risk]. In fact, contributory negligence occurs when the plaintiff unreasonably fails to recognize an obvious risk or danger. Incurred risk occurs when the plaintiff voluntarily accepts a known risk or danger. With these defenses ..., there is no need to extend the open and obvious danger test....' "

*Bridgewater, supra* at 489 (quoting *Law, supra,* at 681) (citations omitted). Likewise, the defenses of contributory willful or wanton misconduct and incurred risk adequately cover a claim of willful or wanton misconduct without borrowing other doctrines.

*Bemis* too is edifying:

> "In the area of products liability, *based upon negligence or based upon strict liability under § 402A of the Restatement (Second) of Torts,* to impress liability upon manufacturers, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product."

*Id.* at 1061 (emphasis supplied). *A fortiori,* consistent limitation of the principle would entail application of the open and obvious danger rule to product liability claims involving only negligence and strict liability actions.

The rationale for precluding the open and obvious danger rule as an automatic bar to recovery for a plaintiff in claims of willful and wanton misconduct is not hard to find.

The focus of willful misconduct is not on the product but on the culpability of the manufacturer. *See* V. SCHWARTZ, COMPARATIVE NEGLIGENCE § 5.1 (1974). When a manufacturer acts recklessly, reflecting a callous sacrifice of consumer safety for the benefit of the enterprise, the scope of a manufacturer's legal responsibility for injuries from its defective products should reflect that measure of its culpability. The manufacturer maintains a powerful position of control over product safety and has, the opportunity to consider the potential legal consequences flowing from its conduct. Owen, *supra.*

However, if the injured person was reckless with regard to his or her own safety, recovery against even a reckless manufacturer will be barred. *Davis v. Stinson* (1987), Ind.App., 508 N.E.2d 65, *trans. denied*; RESTATEMENT (SECOND) OF TORTS § 503(3) (1965). Comment b to § 503 indicates that a plaintiff is not "barred from recovery merely by a failure to exercise ordinary care and competence to protect himself after he knows of the defendant's reckless misconduct and realizes the danger." An additional requirement to allow recovery to the plaintiff is that the defendant must have knowledge of facts sufficient to imply that he knew the plaintiff would not extricate himself from the peril. *McKeown v. Calusa* (1977), 172 Ind. App. 1, 359 N.E.2d 550, *trans. denied.*

The trial court barred Koskes's willful and wanton misconduct claim because of the open and obvious danger rule. We have concluded that the open and obvious danger rule should not preclude claims of willful or wanton misconduct. The obviousness of the danger is but one factor. Summary judgment therefore is not proper on this claim because genuine issues of material fact exist as to: whether Margaret acted unreasonably when operating the skinner/slasher machine[1] and whether Townsend had knowledge of the danger of

---

[1] One commentator suggests that a jury could find that an employee's voluntary decision to work with an obviously defective machine is not unreasonable because the employee lacks viable alternatives, i.e., the employee's only alternative to using the defective machine is to lose his job. Marschall, *An Obvious Wrong Does Not Make A Right: Manufacturers' Liability for Patently Dangerous Products,* 48 N.Y.U.L.REV. 1065 (1973).

its machine and facts sufficient to imply that the company knew Margaret would not be able to extricate herself. The trial court did not determine whether Townsend's actions constituted willful or wanton misconduct. The trial court's judgment read "that the sole and only issue upon which [Townsend's] Motion for Summary Judgment was sustained was upon the issue of open and obvious danger." *Record* at 932. There was some evidence for a factfinder to conclude that Townsend knew that an unacceptable number of serious injuries were caused by its machine, knew that the machine was a safety hazard, and yet resisted recalling the machine in reckless disregard of the known probable consequences. Accordingly, the trial court's summary judgment in favor of Townsend on Koskes's willful and wanton misconduct claim is reversed and remanded for further proceedings consistent herewith.

ISSUE FOUR—Did a genuine issue of fact exist as to whether there was an open and obvious danger?

PARTIES' CONTENTIONS—Although Koskes concede that the danger of the exposed slasher blades was open and obvious, *appellant's brief* at 19, they argue the relevant danger was the slipping of a jowl when used to push other jowls into the blades.

Townsend claims the machine's blades are patent and the danger of hands being inserted into the blades is open and obvious.

CONCLUSION—The trial court's grant of summary judgment was proper as to the Koskes's strict liability claim because there was no genuine issue of material fact regarding whether the danger of the skinner/slasher machine was open and obvious.

 Initially, we emphasize the strict standard of review for summary judgment. We must liberally construe all evidence in favor of the non-movant and resolve any doubts as to the existence of a genuine factual issue against the proponent of the motion. *Hinkle v. Niehaus Lumber Co.* (1987), Ind.App., 510 N.E.2d 198. Even if the facts are not in dispute, summary judgment is not appropriate if conflicting inferences arise from the facts. *Id.*

 We are bound to follow precedent. *Bemis, supra,* dictates that liability cannot be imposed on a manufacturer if a danger is open and obvious. The question of whether a danger is open and obvious may be a question of fact but when no genuine issue of fact is presented the question becomes a matter of law. *See Bridgewater, supra; Hoffman v. E.W. Bliss Co.* (1983), Ind., 448 N.E.2d 277.

 Koskes correctly observe that the relevant danger is not necessarily the injury-producing mechanism of a machine. *See Hoffman, supra.* In *Hoffman,* a punch press operator reached into the point of operation to remove scraps of metal when the ram suddenly descended without warning or activation by him, thereby crushing his fingers. The supreme court defined the relevant danger as an internal malfunction or defect causing the punch press to double trip. *Id.*

Even if we were to accept Koskes' theory that the relevant danger is the slipping of one jowl when used to push other jowls into the blades, the facts are not in conflict that the danger was open and obvious. Margaret knew the conveyor belt was wet and that the jowls being processed were stiff, cold and icy. Common experience would alert her to the possibility of the jowl slipping as it approached the whirling blades.

 Her situation differs from those cases which hold that a danger may not be open and obvious if there is a known, established way to use it safely. *See, e.g., Presnell, supra; see also Corbin v. Coleco Indus., Inc.* (7th Cir.1984), 748 F.2d 411. The obviousness of a danger depends not only upon what the user sees, but also upon what is known and believed about what is seen. *Corbin, supra,* cited with approval in *Presnell, supra.* "[I]f people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in a way generally believed to be safe is

not open and obvious." *Corbin, supra,* at 418, *quoted in Presnell, supra.* In *Corbin,* expert testimony established that people generally believe that flat, shallow dives into shallow water are safe thereby creating a genuine issue of material fact as to whether the risk of spinal injury by diving into shallow water was open and obvious. In *Presnell,* a question of fact existed whether a danger was open and obvious when users of the lounge chairs were aware of the dangers of improperly opening and securing its support legs, but believed it was safe to unfold the legs to a vertical position until resistance was encountered.

 While Margaret believed her method of operating the machine by using one jowl to push another was a safe precaution, there was no evidence by expert witnesses or other employees of Wilson that this method of operation was generally considered to be safe. So summary judgment was properly granted as to Koskes's strict liability claim.

We reverse the trial court's grant of summary judgment on Koskes's claim of willful or wanton misconduct and remand to the trial court for further proceedings consistent herewith. Otherwise we affirm the trial court's judgment.

SULLIVAN, J., concurs.

NEAL, J., concurs in part and dissents in part.

NEAL, Judge, concurring and dissenting in part.

I respectfully dissent to the conclusion reached in Issue III. I concur in all other issues in the majority opinion.

First, there was no evidence produced in the factual base of the case which could cause the concept of wanton and willful conduct to be invoked.

Secondly, I fail to perceive any connection between the mental state of the manufacturer, a necessary element where wanton and willful conduct is alleged, and the open and obvious rule. Before liability can be impressed upon a manufacturer the defect must be hidden and not normally ob-

servable, thus creating a latent danger in the use of the product. Although the manufacturer who has actual knowledge of an unobservable defect is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all. *Bemis Company, Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058. To be actionable the danger must be latent so as to set a trap for an unwary user. Thus, the open and obvious concept is addressed to the knowledge and mental processes of the user. When he perceives the danger and continues to use the product, the original act of the manufacturer, or his mental state, is no longer a causative factor.