Margaret Ann KOSKE and Jeffrey L. Koske, Appellants (Plaintiffs Below),

v.

TOWNSEND ENGINEERING CO., Appellee (Defendant Below).

No. 52S02–9003–CV–172.

Supreme Court of Indiana.

March 6, 1990.

Edgar W. Bayliff, Bayliff Harrigan Cord & Maugans, P.C., Kokomo, Kelly Leeman, Kelly Leeman & Associates, Logansport, for appellants.

Frank E. Tolbert, R. Tod Groff, Miller, Tolbert, Muehlhausen & Muehlhausen, P.C., Logansport, for appellee.

DICKSON, Justice.

With this case we consider the applicability of the open and obvious danger rule to claims arising under the Indiana Product Liability Act. In this action for personal injuries sustained while using machinery at her employment, Margaret Ann Koske and her husband seek damages from Townsend Engineering Co., the product manufacturer, and assert two theories of liability: a) strict liability in tort for sale of a machine in defective condition unreasonably dangerous pursuant to the 1978 Indiana Product Liability Act; and b) willful or wanton misconduct of the manufacturer for failing to issue post-sale warnings or to recall the machine in reckless disregard of known probable consequences.

Finding that "the danger of which plaintiff complains and by which plaintiff alleges to have been injured constituted an open and obvious danger, which is a complete defense to plaintiff's claim," the trial court granted the defendant's motion for summary judgment. The Court of Appeals affirmed the summary judgment as to the product strict liability theory, but reversed as to the claim of willful or wanton misconduct. *Koske v. Townsend Eng'g Co.* (1988), Ind.App., 526 N.E.2d 985. Both parties now seek transfer.

The following summary of facts is adopted from the opinion of the Court of Appeals.

The undisputed facts indicate that Margaret injured her hand while operating a meat-slicing machine that was designed and manufactured by Townsend. The injury occurred at Wilson Foods Company (Wil-

son), a meat-packing plant located in Logansport, Indiana.

The skinner/slasher machine simultaneously cuts the skin from jowls while slashing the tops of jowls to reveal hidden abscesses. The machine has seventeen circular slashing blades across the top and one long skinning blade on the bottom. It is approximately waist high in height and two feet long with a conveyor belt extending from the front. The conveyor belt moves a jowl into the rotating blades. A toothed roll aids in removing skin from a jowl after the skin has been severed by the skinning blade. The toothed roll pulls the severed skin downward from the blade. The slashing blades have notches that engage the jowl and force the jowl through the blades and through the machine. A cover is mounted over the top of the blades, but an operator of the machine is able to see the blades and the toothed roll. The machine has no safety guards at the point of operation, or elsewhere.

Margaret, employed by Wilson since 1973, was primarily responsible for trimming the remaining hair, skin, and abscesses off of pork jowls immediately after the jowls had gone through the skinner/slasher machine. Consequently, her job station was immediately adjacent to the machine. Approximately two times a week, Margaret assisted on the skinner/slasher machine because it regularly jammed and became a bottleneck in the production line.

On the afternoon of December 28, 1979, the skinner/slasher machine struck an abscess requiring a shutdown for approximately ten minutes to sanitize the machine. The shutdown created a backlog in the processing of jowls, so Margaret left her position as trimmer to help alleviate the bottleneck at the skinner/slasher machine. The jowls being processed had been hanging in the freezer longer because it was toward the end of the work day. As a result, the stiffened jowls would not automatically feed into the machine, and some external force was required to push the jowls into the blades. The sanitation of the machine made the conveyor belt wet and slick. Margaret, aware that her hands

should not be close to the machine because of the sharpness of the blades, used one jowl to push another jowl into the blades of the machine. This was a precaution she regularly exercised when operating the skinner/slasher machine. Unfortunately, on this day, the bottom of the jowl that she was using to push the other jowl into the machine was wet from the conveyor belt, slid over the top of the jowl closest to the blade, and her hand became caught in the machine. Margaret received severe injuries to her hand.

Townsend advertised that the skinner/slasher machine had "improved operator safety" because the operator's hands were kept a minimum of eighteen inches from the machine's blades. However, Townsend was aware, prior to Margaret's injury, that the machine, under some circumstances, was not capable of operating automatically and continuously. For example, Townsend knew meat packers would freeze meat and that the frozen meat required manually pushing the meat into the blades.

Prior to Margaret's unfortunate injuries, several other operators at various meat-packing companies had been seriously injured by the same or a similar skinner/slasher machine model. Townsend was aware of these injuries. Ten months before Margaret's injury, in a letter to a meat-packing company, Townsend acknowledged the "potential safety hazard" of the 814 model and urged that "the 814 [be] removed as soon as possible." Less than a month after Margaret's injury, Townsend recalled the 814 model and offered a refund of the entire purchase price. The pertinent parts of that letter are:

"Recently we became aware of *several instances* where disregard of the obvious danger of putting a hand in the machine has caused, or is rumored to have caused, serious injuries, including the loss of partial use of a hand and arm to some employees in meat packing plants.

In view of these facts, Townsend Engineering Company is now recalling every 814 model in use.

. . . .

You should discuss this letter with your company safety director and your insurance carriers. This situation is serious enough to warrant immediate action." [emphasis supplied by Court of Appeals]

Engineering experts agreed that the 814 model was inadequately guarded. One engineering expert asserted that the "potential elements of danger of the operator using that machine were not seriously considered" when the machine was designed. A barrier guard would have been a very inexpensive safety measure. Other feasible designs with enhanced safety were proposed by these expert witnesses. Townsend replaced the 814 model with model 914. The redesigned skinner/slasher machine was described by a Townsend sales engineer as a unit "designed with operator safety in mind" including a guarded infeed, guarded take-away, and interlock switches to prevent operation in an improper manner. Additionally the 914 model displayed a warning sign which cautioned users not to expose hands or clothing to the toothed roll or skinning blade, and not to reach inside the guards.

1. *Applicability of the Open and Obvious Danger Rule to Strict Liability Claims Under the Product Liability Act*

■ The Indiana open and obvious danger rule was articulated in *Bemis Co. v. Rubush* (1981), Ind., 427 N.E.2d 1058, 1061, *cert. denied* (1982), 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, as follows:

The rule may be stated generally as follows: In the area of products liability, based upon negligence or based upon strict liability under § 402A of the Restatement (Second) of Torts, to impress liability upon manufacturers, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all.

This statement resulted from the court's discussion of the "unreasonably dangerous" element of § 402A of the Restatement (Second) of Torts (1965).

Hence, to be actionable under § 402A, the injury-producing product must be unreasonably dangerous, that is, dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. The harm is not actionable unless the product is "unreasonably dangerous."

427 N.E.2d at 1061. The intended thrust of *Bemis* was to emphasize that § 402A liability should not be imposed for dangers so obvious that manufacturers could reasonably expect anticipated users to perceive and act to avoid injury. This is an entirely proper consideration, as reflected in comments g and i to § 402A:

g. *Defective condition.* The rule stated in this Section applies only where the product is, *at the time it leaves the seller's hands,* in a condition *not contemplated by the ultimate consumer,* which will be unreasonably dangerous to him.... [emphasis added]

i. *Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics....

■ The concepts "defective condition" and "unreasonably dangerous" focus the relevant inquiry upon the product and its manufacturer or seller, as assessed by an objective standard, regarding expected use. Thus, in determining whether a product was sold in a defective condition unreasonably dangerous to a user, considerations must necessarily include the reasonably anticipated knowledge, perception, appreciation, circumstances, and behavior of expect-

ed users. However, as formulated in *Bemis* and applied by the Court of Appeals in the present case and others, the language of the "rule" went further. By precluding liability whenever the defect is open and obvious, patent, or not hidden, it tended to obscure or minimize consideration of human factors related to the foreseeable circumstances of expected product use. *Koske*, 526 N.E.2d 985; *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719 (transfer pending); *Miller v. Todd* (1988), Ind.App., 518 N.E.2d 1124 (transfer pending). *But cf. Hoffman v. E.W. Bliss Co.* (1983), Ind., 448 N.E.2d 277; *Kroger Co. Sav–On Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538; *Corbin v. Coleco Indus., Inc.* (7th Cir.1984), 748 F.2d 411.

In addition to its role in assessing a manufacturer's expectations regarding product use, the obviousness of a danger is also an appropriate consideration in product strict liability to evaluate the actual state of mind of the product user if the affirmative defense of incurred risk is asserted. Thus, even if a product is sold in a defective condition unreasonably dangerous, recovery will be denied an injured plaintiff who had actual knowledge and appreciation of the specific danger and voluntarily accepted the risk.

Many subsequent cases applied the *Bemis* open and obvious danger language not merely to aid in the determination of "unreasonably dangerous" relative to a product and its manufacturer, but also to engraft upon § 402A an additional element involving evaluation of the plaintiff's conduct separate and apart from the affirmative defense of incurred risk. *Angola State Bank v. Butler Mfg. Co.* (1985), Ind. App., 475 N.E.2d 717 (notwithstanding evidence showing unguarded chain and sprocket mechanism was unreasonably dangerous, the open and obvious danger rule did apply to preclude manufacturer liability); *Ragsdale v. K–Mart Corp.* (1984), Ind. App., 468 N.E.2d 524 (summary judgment upheld applying open and obvious danger rule as proper consideration for determining whether plaintiff acted reasonably in exposing himself to danger); *Law v. Yu-*kon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677 (open and obvious danger rule applies objective test to determine whether plaintiff should have recognized the danger); *Bryant–Poff, Inc. v. Hahn* (1982), Ind.App., 454 N.E.2d 1223, *trans. denied* (1983), Ind., 453 N.E.2d 1171, *cert. denied* (1984), 465 U.S. 1075, 104 S.Ct. 1433, 79 L.Ed.2d 756 (rule requires objective test of what the user should have known to determine if an unshielded power takeoff shaft was open and obvious).

Resort to an objective standard to determine what a product user should have seen and known about a product danger is further inappropriate because such application of the rule is akin to the contributory negligence defense, which would otherwise not be available in strict liability in tort. *Hoffman*, 448 N.E.2d at 282; *Perfection Paint & Color Co. v. Konduris* (1970), 147 Ind. App. 106, 258 N.E.2d 681. *See also* Restatement (Second) of Torts § 402A comment n.

The *Bemis* case involved an accident which occurred before enactment of the 1978 Indiana Product Liability Act, 1978 Ind.Acts 141, § 28. Among provisions of the Act were the following:

Ind.Code § 33–1–1.5–1. This chapter shall govern all products liability actions, including those in which the theory of liability is negligence or strict liability in tort; provided however, that this chapter does not apply to actions arising from or based upon any alleged breach of warranty.

Ind.Code § 33–1–1.5–2. As used in this chapter: ... "Product liability action" shall include all actions brought for or on account of personal injury, disability, disease, death or property damage caused by, or resulting from, the manufacture, construction or design of any product....

Ind.Code § 33–1–1.5–3. Codification and Restatement of Strict Liability in Tort. The common law of this state with respect to strict liability in tort is codified and restated as follows:

(a) One who sells any product in a defective condition unreasonably danger-

ous to any user or consumer or to his property is subject to liability for physical harm thereby caused to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and, if:

(1) the seller is engaged in the business of selling such a product, and

(2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(b) The rule stated in Subsection (a) applies although

(1) the seller has exercised all possible care in the preparation and sale of his product, and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

■ The 1978 Indiana Product Liability Act, while generally declaring itself to be applicable both to negligence and strict liability cases, expressly undertook a "Codification and Restatement" *only* as to strict liability in tort. The 1978 Act incorporated almost verbatim the language of Restatement (Second) § 402A in section 4 of the Product Liability Act.[1] The enumeration of affirmative defenses in section 4 of the Act was applicable only to strict liability in tort. The Act did not attempt to codify and restate defenses applicable to claims based on negligence. Only the statute of limitations, section 5, was left generally applicable to both negligence and strict liability in tort cases. Subsequent amendments in 1983 did not diminish but enhanced the clarity of these distinctions by changes in sections 1, 2, and 3.[2]

Because of the express intention to codify and restate, and because the resulting enactment comprehensively addressed the subject matter, we conclude that with the 1978 Product Liability Act the legislature entered, occupied, and preempted the field of product strict liability in tort.

■ Whether the *Bemis* open and obvious danger rule was an included concept in product strict liability law as restated in the Act depends upon whether the Act by express terms or by unmistakable implication made changes in the preexisting common law. *State Farm Fire and Casualty Co. v. Structo Div., King Seeley Thermos Co.* (1989), Ind., 540 N.E.2d 597. We find the implication unmistakable that the open and obvious danger rule, as developed in *Bemis* and its progeny, was excluded from the Act's codification and restatement of the law of strict liability in tort. The Act not only employed the language of Restatement (Second) § 402A without explicitly incorporating the words open and obvious or requiring that a defect be latent or concealed, but it also expressly delineated the allowable defenses to strict liability in tort to include evaluation of the product user's conduct only by a subjective rather than an objective standard.[3]

We hold that the Indiana open and obvious danger rule does not apply to strict liability claims under the Indiana Product Liability Act. Because the present case arose on December 28, 1979, it is governed by the 1978 Product Liability Act as to its theory of strict liability in tort. It was therefore error to grant summary judgment based upon application of the open and obvious danger rule to the statutory cause of action. However, this holding does not preclude the defendant from again seeking summary judgment if it can show

---

**1.** The only significant departure from the language of Section 402A was that Section 3(a) of the 1978 Act added the phrase "if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition," which phrase is not contained in Section 402A.

**2.** Among the several amendments enacted in 1983 Ind.Acts 297, was the rewriting of § 33–1–1.5–1 to explicitly designate that, except

as to its statute of limitations provision, the chapter governed only "actions in which the theory of liability is strict liability in tort."

**3.** Section 4(b)(1) of the 1978 Act provided: "It is a defense that the user or consumer *discovered* the defect and *was aware* of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it." (emphasis added)

a favorable absence of genuine issue of material fact as to whether its product was provided in a defective condition and unreasonably dangerous under the 1978 Product Liability Act.

## 2. Applicability of the Open and Obvious Danger Rule to Claim of Willful or Wanton Misconduct

Reversing in part the trial court's grant of summary judgment, the Court of Appeals concluded "[a] danger that is open and obvious does not necessarily preclude a manufacturer's liability for claims of willful or wanton misconduct asserted by an injured plaintiff." *Koske*, 526 N.E.2d at 990.

Defendant Townsend Engineering, presuming that the correctness of summary judgment on the product strict liability theory means that the product was not defective, argues that liability for willful and wanton misconduct should not be imposed upon the manufacturer of a non-defective product. Because we have reversed summary judgment on the product strict liability count, it is not necessary to address this argument.

■ The defendant also argues, citing *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207, that this Court has already declared that willful and wanton acts do not constitute an independent basis of liability outside of the Product Liability Act and that the Act applies to all product liability actions, including those based on negligence, of which willful and wanton is but one species. *Dague* involved only the applicability of the statute of limitations provision of the Act to actions alleging product negligence liability. In appellate opinions, statements not necessary in the determination of the issues presented are *obiter dictum.* They are not, binding and do not become the law. *Szilagyi v.*

State ex rel. La Porte Community School Corp. (1968), 249 Ind. 400, 410, 233 N.E.2d 181, 183, *denying reh'g to* (1967), 249 Ind. 400, 231 N.E.2d 221. The language found in *Dague* does not compel the conclusion that the Product Liability Act merges all forms of action for product-related injury.

As discussed in Issue 1 above, the 1978 Indiana Product Liability Act preempted common law product strict liability. However, because the Act's express codification and restatement did not extend to general product negligence law, because the Act did not comprehensively cover the subject matter of general product negligence law, and because the Act did not by express terms or unmistakable implication change general product negligence law, the Product Liability Act did not generally supplant areas of product liability law outside of strict liability in tort.

■ The open and obvious danger rule has been applied in claims based not on product strict liability but rather alleging negligent design. *Bridgewater v. Economy Eng'g Co.* (1985), Ind., 486 N.E.2d 484. The Indiana common law open and obvious rule resulting from *Bemis* and its progeny was thus not superceded by the Act as to product negligence liability cases.[4] In the present case the defendant seeks to extend the rule to claims alleging a culpability greater than ordinary negligence.

■ With respect to the new question of law [5] regarding the applicability of the open and obvious danger rule upon a manufacturer's liability for claims of willful or wanton misconduct, the Court of Appeals, distinguishing between the liability of an innocent manufacturer of a defective product and that of a manufacturer who recklessly endangers consumer safety, concluded that the rule should not be extended to preclude claims of willful or wan-

---

4. The present case is predicated upon liability theories of willful or wanton misconduct and product strict liability. The issues presented on appeal do not seek evaluation of whether the court-created open and obvious danger rule should be retained in product negligence liability cases.

5. This question may have only minimal future significance in view of our discussion and decision in Issue 1 and because as to actions subject to the Indiana Comparative Fault Act, conduct that is willful or wanton is treated the same as that which is negligent. Ind.Code § 34–4–33–2(a).

ton misconduct and reversed the trial court's summary judgment. We now adopt and incorporate the discussion and decision of "ISSUE THREE" in the opinion of the Court of Appeals, 526 N.E.2d at 990–92, pursuant to Ind.Appellate Rule 11(B)(3).

Transfer is granted. Except to the extent expressly incorporated above, the opinion of the Court of Appeals is vacated. The entry of summary judgment is reversed, and this cause is remanded for further proceedings consistent herewith.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., dissents with opinion.

PIVARNIK, J., not participating.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case.

One finds throughout the Restatement (Second) of Torts, in cases from this and other jurisdictions, and even in our own statute, Ind.Code § 33–1–1.5–1 *et seq.*, the erroneous use of the term "strict liability" applied to manufacturer's liability cases. This term repeatedly is used erroneously when the author actually is referring to a *res ipsa loquitur*-type case. Even when the term is used, the author ends up reciting a case of negligence on the part of the manufacturer.

It is true that in many instances it is impossible for a plaintiff to demonstrate precisely in what manner the manufacturer was negligent. That is where the doctrine of *res ipsa loquitur* takes over, and given proof of a defective manufacture, the negligence is presumed by reason of the exclusive control of the manufacturer over the item during that time. I have yet to see the case that holds that a manufacturer of a product is liable for any and all damage done by his product without any proof or demonstration whatsoever of negligence.

I disagree with the premise set out in the majority opinion that there are two types of manufacturer's liability, one of which is strict liability and that the law set forth in *Bemis Co., Inc. v. Rubush* (1981), Ind., 427

N.E.2d 1058, *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, is not applicable in so-called strict liability cases. The law set forth in *Bemis* is applicable to the case at bar.

I would grant transfer and affirm the trial court in its grant of summary judgment on both counts.